[Cite as *State v. Riggans*, 2010-Ohio-1254.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### ALLEN COUNTY

STATE OF OHIO,            CASE NO. 1-09-56

    PLAINTIFF-APPELLEE,

  v.

WILLIE RIGGANS,            **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2009 0021

Judgment Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Decision: March 29, 2010

APPEARANCES:

     *Willie Riggans*, Appellant

     *Jana E. Emerick*, for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Willie J. Riggans (hereinafter "Riggans"), pro se, appeals the trial court's judgment entry of conviction and sentencing. We affirm Riggans' conviction but remand this matter for the trial court to correct its judgment entry relative to post-release control pursuant to R.C. 2929.191.

{¶2} On January 15, 2009, the Allen County Grand Jury indicted Riggans on two (2) counts, including: count one (1) of aggravated trafficking in drugs, within the vicinity of a juvenile, in violation of R.C. 2925.03(A)(1), (C)(1)(c), a second degree felony; and count two (2) of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(1)(c). (Doc. No. 1).

{¶3} On March 20, 2009, Riggans entered a plea of not guilty at arraignment. (Doc. Nos. 4, 6, 8).

{¶4} On May 5, 2009, a final pre-trial was held wherein Riggans executed a negotiated plea of guilty to the charges in the indictment. (Doc. Nos. 28, 31). That same day, Riggans appeared before the trial court, withdrew his previously tendered not guilty plea, and entered guilty pleas to both charges in the indictment. (May 6, 2009 JE, Doc. No. 32). The trial court thereafter sentenced Riggans to four (4) years of incarceration on count one (1) and two (2) years incarceration on count two (2). (Id.). The trial court ordered that the terms on counts one (1) and two (2) be served consecutively to each other for a total aggregate term of six (6) years incarceration, and the trial court further ordered that the sentence imposed in

- 2 -

this case run consecutive to the term imposed in Riggans' previous case, case no. CR2007 0254. (Id.).

**{¶5}** On October 23, 2009, Riggans filed a notice of appeal. (Doc. No. 39). On October 28, 2009, Riggans filed a motion for delayed appeal with this Court, which we granted on November 20, 2009.

**{¶6}** Riggans now appeals raising two assignments of error for our review.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT'S CONDUCT AND DIRECT PARTICIPATION IN THE PLEA NEGOTIATION PROCESS RENDERED APPELLANT'S PLEA INVOLUNTARY.**

**{¶7}** In his first assignment of error, Riggans argues that his guilty pleas were involuntary because "the record demonstrates that the trial court, and Riggans, were essentially the only parties involved in the plea negotiations." (Appellant's Brief at 10). Riggans further asserts that that the trial court judge "lost his composure, and became hostile towards [him]" when he asked to dismiss his counsel for ineffective assistance. (Id. at 7). Riggans argues that "it would be difficult to say that [he] was not influenced by the judge's attitude, demeanor, and coercive language." (Id. at 10). We disagree.

**{¶8}** Although strongly discouraged by the Ohio Supreme Court, a trial judge's participation in plea negotiations does not render a defendant's plea invalid per se under the Ohio and United States Constitutions. *State v. Byrd*

(1980), 63 Ohio St.2d 288, 293-94, 407 N.E.2d 1384. Nonetheless, "a trial judge's participation in the plea bargaining process must be carefully scrutinized to determine if the judge's intervention affected the voluntariness of the defendant's guilty plea." Id. Ordinarily, a plea should be found involuntary under the Fifth Amendment and Section 10, Article I of the Ohio Constitution "if the judge's active conduct could lead a defendant to believe he cannot get a fair trial because the judge thinks that a trial is a futile exercise or that the judge would be biased against him at trial." Id.

{¶9} As an initial matter, the trial court's involvement in the plea negotiations sub judice—which was limited to providing the State and the defendant with a range of sentence it would impose—was qualitatively different than the trial court's involvement found objectionable in *Byrd*, supra. The trial court judge in *Byrd* solicited an unrequested meeting with the defendant's mother and sister through a deputy sheriff who was also a friend of the defendant's family. 63 Ohio St.3d at 289-90. At this meeting, the trial court judge informed the defendant's mother and sister that the defendant would face a predominantly white jury, and, if convicted, the defendant would be sentenced to death by the electric chair. Id. The trial court judge told the defendant's mother that it would be wise for her to get the defendant to plead guilty so that he would not be sentenced to death. Id. The defendant's sister indicated that the trial court judge asked them to go to the jail and have the defendant sign a plea agreement. Id.

{¶10} After talking with his mother and sister, the defendant met with the trial court judge in chambers along with a sheriff's deputy, a probation officer, and an assistant prosecutor. Id. at 290. The defendant was not provided with counsel nor was he advised to obtain counsel. Id. The trial court judge negotiated a plea bargain with the prosecutor, and, thereafter, informed the defendant that it was a "pretty good" deal. Id. The trial court judge also informed the defendant that, if he declined to plead guilty, he would face a lengthy trial. Id. The trial court judge further informed the defendant that he would decide the sentence in the event the jury convicted him of aggravated murder. Id. During this meeting, the trial court also enlisted the aid of the deputy sheriff, a friend of the defendant's family, in convincing the defendant to plead guilty. Id. Aside from all of this, the trial court judge twice noted during the meeting that the defendant was "kind of in the air all the time" or half asleep due to his drug problems. Id.

{¶11} The Ohio Supreme Court, reviewing this record, concluded that the trial court judge's conduct in all probability led the defendant to conclude that he would not receive a fair trial and that proceeding to trial was futile. Id. at 294. The Court further noted that the defendant was exposed to a coercive environment to induce his change of plea because the trial judge used authority figures, family, and family friends to persuade the defendant to plead guilty. Id. In addition to that, at the time of the meeting, the defendant was addicted to methodone and was not provided an attorney. Id.

{¶12} The trial court's involvement in the plea negotiations here was limited to its indication to the parties that "it would not sentence [Riggans] over seven (7) years" if he pled guilty to the charges pursuant to the plea agreement. (May 5, 2009 Tr. at 2). This involvement is much less coercive than that of the trial court judge in *Byrd*. Furthermore, a defendant's plea is not rendered involuntary merely because the trial court promised a particular sentence; rather, the defendant's plea *may* be rendered involuntary when the trial court fails to impose the promised sentence. *Akron v. Hendon*, 9th Dist. No. 22791, 2006-Ohio-1038, ¶13-14 (trial court's indication that it would give defendant credit for time served was not impermissible involvement in plea negotiations); *State v. Walker* (1989), 61 Ohio App.3d 768, 770, 573 N.E.2d 1158. The trial court sentenced Riggans to an aggregate total of six (6) years, which was within the range stated by the trial court; and therefore, Riggans' plea was not involuntary on that basis. (May 6, 2009 JE, Doc. No. 32).

{¶13} Additionally, nothing in the record here indicates that the trial court judge thought a trial was futile; in fact, the trial court judge suggested that, if Riggans was not satisfied with the plea agreement, the matter could proceed to trial as previously scheduled. (May 5, 2009 Tr. at 16, 19-20). See *State v. Bizzell*, (Sept. 29, 2000), 2nd Dist. Nos. 18055, 98-CR-2537, at *2 (noting that the trial court reminded the defendant he could abandon his agreement and proceed to trial). Furthermore, the record does not reveal any bias against Riggans, as he

suggests. The trial court judge specifically noted on the record that he was not "upset" at Riggans, but merely "disappointed" with Riggans, and, again, reaffirmed Riggans' right to proceed to trial. (Id. at 14). Furthermore, the trial court provided Riggans with a twenty-six (26) minute recess to further discuss the plea agreement with his attorney before accepting his change of plea. (Id. at 16-17). After Riggans further discussed the plea agreement with his attorney and the trial court explained that the terms imposed in this case would be consecutive to the sentence imposed in his previous case, Riggans indicated that he was satisfied with counsel and that he wanted to change his pleas to guilty. (Id. at 21-23).

{¶14} On the basis of the record before us, we cannot conclude that Riggans' plea was involuntary; and therefore, his first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED WHEN IT FAILED TO PROPERLY STATE APPELLANT'S MANDATORY POST-RELEASE CONTROL OBLIGATIONS IN THE JUDGMENT ENTRY OF CONVICTION AND SENTENCE.**

{¶15} In his second assignment of error, Riggans argues that the trial court erred by notifying him in its journal entry that he was subject to "up to" three years of post-release control. Riggans argues that this matter must be remanded for resentencing. The State concedes that the trial court's entry is in error and the matter must be remanded.

{¶16} Riggans pled guilty to a second degree felony and a third degree felony. R.C. 2967.28(B) provides, in pertinent part:

> **(B) Each sentence to a prison term for a felony of the * * * second degree * * * *shall* include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment. * * * * Unless reduced by the parole board pursuant to division (D) of this section when authorized under that division, a period of post-release control required by this division for an offender *shall be* of one of the following periods:**
> **\* \* \***
> **(2) For a felony of the second degree that is not a felony sex offense, *three years*;**

(Emphasis added). At the combined change of plea and sentencing hearing the trial court twice informed Riggans that he would be subject to "a period of three (3) years" post-release control. (May 5, 2009 Tr. at 5, 46). However, the trial court's judgment entry states that "[u]pon completion of the prison term, the defendant shall be subject to such further period of supervision under POST RELEASE CONTROL as the parole board may determine pursuant to law (*up to three (3) years*)." (May 6, 2009 JE, Doc. No. 32) (emphasis added). It appears that the trial court incorporated into its judgment entry the post-release control provided for third, fourth, and fifth degree felonies as provided in R.C. 2967.28(C) of "up to three years." Since Riggans pled guilty to a second degree felony, R.C. 2967.28(B) governs and provides that the period of post-release control "shall be" "three years," not "up to three years." As such, the trial court's judgment entry of sentence is in error. Since Riggans was sentenced after July 11, 2006, the

- 8 -

effective date R.C. 2929.191 (H.B. 137), this matter must be remanded for the trial court to correct its sentence in accordance with R.C. 2929.191. *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, paragraph two of the syllabus.

**{¶17}** Riggans' second assignment of error is, therefore, sustained.

**{¶18}** Accordingly, we affirm Riggans' conviction but remand this matter for the trial court to correct its judgment entry relative to post-release control pursuant to R.C. 2929.191.

*Affirmed in part, Reversed in part, and Cause Remanded*

**WILLAMOWSKI, P.J., and ROGERS, J., concur.**

**/jnc**